IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOTIVATION INNOVATIONS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>DSW, INC.; VALUE CITY DEPARTMENT STORES, LLC; BED BATH & BEYOND, INC.; and HALLMARK MARKETING CORPORATION,<br><br>                Defendants. | C.A. No. 08-334-SLR |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR STAY PENDING REEXAMINATION

YOUNG CONAWAY STARGATT & TAYLOR LLP
Karen L. Pascale (#2903)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kpascale@ycst.com

*Of Counsel:*

Gregory P. Casimer
Sally J. Wiggins
Lee F. Grossman
Anna B. Folgers
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

*Attorneys for Plaintiff,
Motivation Innovations LLC*

April 20, 2009

# **TABLE OF CONTENTS**

I. IT IS NOT EARLY IN *THIS* LITIGATION ................................................................. 2

II. A STAY WOULD NOT SIMPLIFY THE ISSUES FOR *THIS* TRIAL ..................... 4

III. A STAY IN *THIS* CASE WILL HARM PLAINTIFF .................................................. 6

    A.    Evidence Perishes Over Time ............................................................................. 6

    B.    A Stay Creates a Tactical Disadvantage ............................................................ 8

    C.    Plaintiff Is Not Barred From Obtaining Injunctive Relief ................................. 9

IV. DENIAL OF A STAY IS NOT A HARDSHIP TO THE DEFENDANTS ................. 10

V. CONCLUSION ........................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

Alltech, Inc. v. Cenzone Tech., Inc.,
2007 WL 935516 (S.D. Cal. Mar. 21, 2007) .......................................................................... 8

Anascape, Ltd. v. Microsoft Corp.,
475 F. Supp. 2d 612 (E.D. Tex. 2007) ............................................................................... 6, 8

Arthrocare Corp. v. Smith & Nephew, Inc.,
315 F. Supp. 2d 615 (D. Del. 2004) .................................................................................. 1, 11

Biax Corp. v. Fujitsu Computer Sys. Corp.,
2009 WL 614187 (E.D. Tex. Feb. 26, 2007) ........................................................................ 4

Burlington Indus., Inc. v. Dayco Corp.,
849 F.2d 1418 (Fed. Cir. 1988) ............................................................................................ 9

Cognex Corp. v. National Instruments Corp.,
C.A. No. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) .................................. 10

Ebay Inc. v. MercExchange, L.L.C.,
547 U.S. 388 (2006) .............................................................................................................. 9

Entotech Corp. v. Autotech Corp.,
15 U.S.P.Q. 2d 1319 (N.D. Cal. 1990) ................................................................................. 6

Ethicon, Inc. v. Quigg,
849 F.2d 1422 (Fed. Cir. 1988) ....................................................................................... 1, 11

In re Etter,
756 F.2d 852 (Fed. Cir. 1985) .......................................................................................... 1, 11

Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.,
2007 WL 1655625 (N.D. Cal. June 7, 2007) ........................................................................ 8

Gladish v. Tyco Toys, Inc.,
1993 WL 625509 (E.D. Cal. Sept. 16, 1993) .................................................................... 5, 6

Hickman v. Taylor,
329 U.S. 495 (1947) .............................................................................................................. 6

Hicks v. Feeney,
124 F.R.D. 79 (D. Del. 1987) ............................................................................................... 6

Intervet America, Inc. v. Kee-Vet Labs., Inc.,
887 F.2d 1050 (Fed. Cir. 1989)..........................................................................................5

Kenexa BrassRing, Inc. v. Taleo Corp.,
C.A. No. 07-521-SLR (ORDER) (D. Del. Feb.18, 2009)..............................................8, 12

Landis v. North Am. Co.,
299 U.S. 248 (1936)....................................................................................................1, 10

NTP, Inc. v. Research In Motion, Ltd.,
397 F. Supp. 2d 785 (E.D. Va. 2005) ...............................................................................10

Novozymes A/S v. Genencor Int'l, Inc.,
474 F. Supp. 2d 592 (D. Del. 2007)....................................................................................9

Ohio Willow Wood Co. v. ALPS South Corp.,
2008 WL 4683222 (S.D. Ohio Oct. 21, 2008)....................................................................8

Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.,
C.A. No. 08-309-JJF-LPS, 2008 WL 5335400 (D. Del. Dec. 19. 2008)...........................10

St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.,
C.A. No. 01-557-JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) .................................10

Tokuyama Corp. v. Vision Dynamics, LLC,
2008 WL 4452118 (N.D. Cal. Oct. 2, 2008).......................................................................4

Viskase Corp. v. American Nat'l Can Co.,
261 F.3d 1316 (Fed. Cir. 2001).........................................................................................11

Voith Paper GMBH & Co. KG v. JohnsonFoils, Inc.,
C.A. No. 07-226-JJF, 2008 WL 874311 (D. Del. Mar. 31, 2008) ....................................10

**STATUTES**

35 U.S.C. §102 ..........................................................................................................................5

35 U.S.C. §103 ..........................................................................................................................5

35 U.S.C. § 301..........................................................................................................................5

35 U.S.C. § 315(c) .....................................................................................................................5

This case, if not stayed, will be resolved in just one year. All discovery will be completed by August 21, 2009. Claim construction will be fully briefed by September 25, 2009. Trial is scheduled for April 26, 2010. The Defendants offer a parade of horribles to support the argument that it somehow "simplifies" this case to bring it to a halt for an indefinite period of time while the '527 patent is re-examined in view of just three prior art references – one of which was considered by the PTO in the original examination. The Defendants offer abundant speculation but little actual evidence to support the claim that *this* reexamination will have a beneficial effect on *this* litigation.

Moreover, the Defendants fail to demonstrate that they will suffer any "hardship or inequity in being required to go forward" with this litigation, Landis v. North American Co., 299 U.S. 248, 255 (1936). Nor do they explain how the prior art references in their petition present "a strong case of invalidity" to the PTO, but going to trial with the same prior art (and more) would risk "irreparable injury."

The Defendants' request is wholly unknowable in duration, asking for the stay to extend until the "outcome of the reexamination." The Defendants believe that there is so much value to the reexamination process that it justifies at least a 24 month addition to the remaining 12 month case schedule. However, the source of this abundance of efficiency is not apparent. "Litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985). Since different standards are employed, it is neither incorrect nor unusual to expect different results. "The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions." Ethicon v. Quigg, 849 F.2d 1422, 1428 (Fed. Cir. 1988); see also Arthrocare Corp. v. Smith & Nephew, 315 F. Supp 2d 615, 619-620 (D. Del. 2004).

An indefinite stay at this time also puts Motivation at a distinct tactical disadvantage. The Defendants will have years to search the globe for prior art references and develop additional invalidity theories because all of the necessary information about the patent and its file history are known to them. Further, even though the reexam petition is an *ex parte* request, there is nothing stopping the Defendants from complicating and extending the reexam process by periodically informing Motivation of additional prior art discovered during the stay. Such prior art would need to be considered by Motivation and its counsel for possible submission to the PTO as part of the reexamination process.

Aside from the reexam, the mere existence of the petition and motion to stay is already interfering with the Motivation's ability to obtain discovery in this case. Even now, a highly relevant third party (who apparently runs the BBB coupon program) is refusing to comply with Motivation's subpoena merely because the Defendants have *sought* a stay of the litigation.

The Defendants do not offer nearly enough real evidence of benefit to justify converting a 12 month case schedule into a three year (or longer) odyssey. The only potential harm to the Defendants – the risk of inconsistent outcomes – is one they created themselves by filing the petition for reexamination. For these reasons – as set forth more fully below – the Defendants' motion to stay should be denied.

## I.   IT IS NOT EARLY IN *THIS* LITIGATION

This case is not in its infancy as the Defendants have suggested (Defendants' Opening Brief (D.I. 82) ("Op. Brf.") at 1). The following events have already passed:

- The case was filed on June 4, 2008, and a motion to dismiss certain claims was heard and denied by September 26, 2008;

- A schedule order was issued on December 1, 2008;

- The parties exchanged initial disclosures on December 1, 2008, and Plaintiff served discovery on all Defendants by December 1, 2008;

2

- Plaintiff produced its initial disclosure documents on March 4, 2009;

- Plaintiff served Rule 30(b)(6) deposition notices on all Defendants on March 4, 2009;

- Plaintiff served a Rule 45 subpoena on Harte Hanks on March 25, 2009;

- The parties jointly requested a short extension of discovery deadlines (but did not seek amendment of the trial date) on March 3, 2009;

- The Defendants answered discovery requests on January 12, 2009, but did not offer or begin to produce any documents until after the Plaintiff filed its emergency motion to compel discovery on March 31, 2009.

A fair characterization of the status of this case is that it is in the middle of discovery with the following deadlines approaching:

- Document production completion deadline is May 15, 2009;

- Responses to contention interrogatories, which were served by April 1, 2009 are due May 1, 2009;

- All fact discovery is to be commenced in time to be completed by August 1, 2009;

- All expert discovery is to be commenced in time to be completed by August 21, 2009;

- Expert reports on issues for which the parties have the burden of proof are due June 26, 2009 with rebuttal expert reports due July 24, 2009.

- The parties joint claim construction statement is due on August 31, 2009;

- The simultaneous exchange of claim construction briefs is set to occur on September 11, 2009.

The lack of discovery cited by the Defendants (Op. Brf. at 4) reflects a litigation tactic, not a lack of progress. Over the course of the past few months the Defendants have consistently dragged their feet in responding to Motivations' discovery requests. Despite phone conferences, e-mails and letters from Plaintiff to the Defendants on March 6th, 10th and 25th, 2009, the Defendants refused to commit to a date certain for the production of documents. This forced Motivation to file a request for emergency relief with this Court on March 31, 2009.

3

Coincidentally, the very next day, the Defendants submitted letters to Motivation confirming the subsequent production of documents. During a conference call on April 1, 2009, the Defendants asked Motivation to withdraw its emergency motion. Less than two hours after Motivation hung up the phone, Motivation received electronic correspondence from the Defendants informing Motivation that an *ex parte* reexamination had been filed with the PTO (Ex. A). The next day, the Defendants filed the instant motion to stay this litigation.

In sum, the Defendants waited almost a year after this case was initiated and over five months after this Court entered its first scheduling order before even seeking the reexamination. During this time, the litigation has proceeded according to those orders. It is a virtual certainty that the issue of validity will be decided in this litigation long before the PTO resolves the merits of the Defendants' request for reexamination of the '527 Patent.

## II. A STAY WOULD NOT SIMPLIFY THE ISSUES FOR *THIS* TRIAL

The Defendants assertion that the reexamination will simplify the issues in this case is pure guesswork. While a reexamination always has the potential to simplify issues for trial, any claim that *this* case would be simplified is speculative at best. Biax Corp. v. Fujitsu Computer Sys. Corp., 2009 WL 614187, at *2 (E.D. Tex. Feb. 26, 2007) ("waiting for the completion of the reexamination may only simplify the case to a limited degree ... [t]his factor is speculative and does not support a stay"); Tokuyama Corp. v. Vision Dynamics, LLC, 2008 WL 4452118, *3 (N.D. Cal. Oct. 2, 2008) ("a stay pending reexamination does not simplify the issues and reduce the complexity of the trial in every case.") In this case, the Defendants have submitted just three prior art references to the PTO for consideration. Remarkably, the claims of the '527 Patent have already been allowed over one of the three references (U.S. Patent No. 4,908,761) during the original prosecution of the claims. There are 20 claims in the '527 Patent, but the Defendants petition only alleges anticipation of 7 claims under 35 U.S.C. §102. The remaining 13 claims are

subject only to the weaker obviousness arguments, combining references under 35 U.S.C. §103. The brevity and simplicity of the Defendants' petition does not suggest that the issues in this case will be substantially simplified. Indeed, in combination with the timing of the filing as described in section I, the Defendants' conduct suggests that this is primarily a delay tactic.

All the Defendants rely upon to support their assertion is the fact that some claims may be amended or the claims cancelled entirely. While it is statistically likely that claims may be amended or added, the PTO data also suggests that one or more claims will survive untouched. It is of no moment that some claims may be cancelled since "a patent is infringed if a single claim is infringed." Intervet America, Inc. v. Kee-Vet Labs., Inc., 887 F.2d. 1050, 1055 (Fed. Cir. 1989).

The fact that this is an *ex parte* reexamination also means that the Defendants will not be precluded from using the same prior art that was placed in front of the examiner when the patent claims are held valid. Pursuant to 35 U.S.C. § 315(c), a defendant is estopped from making the same invalidity arguments that it makes to the PTO during an *inter partes* reexamination proceeding. The reexamination at issue in this case is an *ex parte* one for which the estoppel provisions of Section 315(c) do not apply. Hence, the Defendants are unable to claim the benefit of any estoppel effect on streamlining the issues in this case.

On a similar note, pursuant to 35 U.S.C. § 301 an *ex parte* reexamination only allows for the review of "patents" and "printed publications." Hence, the Defendants will be precluded from introducing additional prior art, including on-sale or public use evidence. See Gladish v. Tyco Toys, Inc., 1993 WL 625509, at *2 (E.D. Cal. Sept. 16, 1993) (denying motion to stay pending reexam; because "validity would remain a contested issue in the action, as not all prior art references material to a determination of validity would have been considered by the PTO");

see also Entotech Corp. v. Autotech Corp., 15 U.S.P.Q.2d 1319 (N.D. Cal. 1990) (stay denied where reexamination would not resolve all issues in the litigation).

More importantly, the Defendants ignore the obvious function of the discovery process – a process which is fully detailed and already in place in this litigation. "The discovery rules are designed to enable litigants to ***narrow and clarify the issues in dispute***, to ascertain the facts underlying those issues and to ferret out the strengths and weaknesses of an adversary's case." Hicks v. Feeney, 124 F.R.D. 79, 82 (D. Del. 1987) (citing Hickman v. Taylor 329 U.S. 495, 500 (1947)) (emphasis added). There is nothing in the Defendants' memorandum that explains why the *ex parte* reexamination process is more effective at simplifying issues than the discovery process already in place.

### III. A STAY IN *THIS* CASE WILL HARM PLAINTIFF

#### A. Evidence Perishes Over Time

The Defendants are seeking a stay which will remain in force "pending the outcome of the reexamination of the '527 Patent." (Op. Brf. at 15.) This represents at least two years of delay and likely more if by "outcome" the Defendants intend to include the resolution of any appeal. The passage of time is not neutral in litigation. Witnesses relocate, memories fade, companies go out of business, and documents are inadvertently misplaced or accidentally destroyed by events beyond the control of the parties. Gladish v. Tyco Toys, Inc., 1993 WL 625509, at *1 (E.D. Cal. Sept. 16, 1993); see also Anascape, Ltd. v. Microsoft Corp., 475 F.Supp. 2d 612, 617 (E.D. Tex. 2007).

Motivation will be prejudiced by the extraordinary length of time even an average reexamination takes. Defendants assume that it is appropriate to average all reexamination data from the inception of *ex parte* reexamination in 1981 to the present. This assumption depends on the absence of any change in the procedure over time. However, it is very clear in the PTO's

6

reported data on Annual Ex Parte Reexam Filings that the pace of filings has dramatically increased over the past five years. (Ex. B.) Nearly every successive year from 2004 to 2008 represented a new record for the number of reexam filings in the PTO. After holding relatively steady over two decades in the 250-350 range, new filings were respectively 436, 520, 511, 642, and 680 from 2004 to 2008.

The Defendants' assertion that "75% of reexaminations result in claims being cancelled or changed," addresses the wrong question. The relevant question is whether original claims will be confirmed or not. The 75% figure cited by the Defendants should be read as stating that 64% of the time one or more claims were amended (while other claims were confirmed or cancelled in proportions not reported by the PTO), while 11% of the time all claims were cancelled. If anything useful can be gleaned from this data, it is as follows: for any one patent, it is over twice as likely that all the claims will be confirmed (25%) than that they all will be cancelled (11%).

Finally, significant questions have been raised about how the PTO is reporting its reexamination data. In an analysis of *inter partes* reexamination data, the Institute for Progress discovered that the PTO's calculation of the average pendency for a reexam included all cases where the patent owner did not bother to respond to the PTO's initial office action. (Ex. C at 4-5.) Calling this methodology "highly skewed," the Institute for Progress filtered the uncontested reexamination cases out of the PTO data and determined that the average pendency increased from the PTO's reported 28.5 months to 43.5 months. (Ex. C at 5.) The report has been favorably endorsed by Kevin Rivette, a Fellow at the Institute for Progress and the current Chairman of the Public Patent Advisory Committee. (Ex. D.) It is reasonable to conclude that the reported average pendency data for *ex parte* reexamination is similarly "skewed" to

underreport the actual time needed to complete the reexamination process – even if staffing levels had kept pace with the increase in filing rates.

This Court recently had the opportunity to opine on this very issue, stating: "[i]t is a rare case in which a reexamination proceeding concludes in a reasonable time and actually changes the character of the case." Kenexa BrassRing, Inc. v. Taleo Corp., C.A. No. 07-521-SLR (ORDER) (D. Del. Feb.18, 2009) (Ex. E).

**B.    A Stay Creates a Tactical Disadvantage**

There are several detrimental practical effects of the passage of time on the Plaintiffs ability to enforce its rights. Witnesses become unavailable, their memories may fade, and evidence may be lost, including electronic records made obsolete or effectively unrecoverable because of advances in technology, while the PTO proceeding takes place. Anascape, Ltd. v. Microsoft Corp., 475 F.Supp.2d 612, 617 (E.D. Tex. 2007) (denying motion to stay pending reexam and stating "crucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later"); Ohio Willow Wood Co. v. ALPS South Corp., 2008 WL 4683222, *4 (S.D. Ohio Oct. 21, 2008) (granting plaintiff's motion for relief from stay); Alltech, Inc. v. Cenzone Tech., Inc., 2007 WL 935516, *2 (S.D. Cal. Mar. 21. 2007) (denying defendant's motion to stay litigation pending reexam); Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc., 2007 WL 1655625, *5 (N.D. Cal. June 7, 2007). The severe time delay inherent in a stay poses an evidentiary disadvantage to Motivation from which it may never recover.

Even now, the Plaintiff is at a disadvantage obtaining discovery for this case. On March 25, 2009, Plaintiff served a Rule 45 subpoena on Harte Hanks, a San Antonio, Texas business identified by Defendant Bed, Bath & Beyond in its Rule 26(a)(1) initial disclosures as having discoverable information about its coupon redemption program. On April 13, 2009, Harte Hanks

8

responded to the subpoena by refusing to collect and produce documents on the grounds that "[d]iscovery would become moot if the pending action is stayed." (Ex. F.)

In addition, the Plaintiff and its reexamination counsel will have their conduct scrutinized by the Defendants during the reexamination for grounds to make evidentiary arguments, objections to claims of privilege, and new allegations of inequitable conduct not currently part of this case. The multiplicity of inequitable conduct claims has been rightly described as a "plague" on the patent bar. Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague"). Therefore a stay increases the cost and complexity of enforcing the Plaintiff's claims and creates a significant tactical disadvantage.

### C. Plaintiff Is Not Barred From Obtaining Injunctive Relief

The parties' status as non-competitors and the fact that Motivation does not sell the inventions claimed in the '527 Patent does not mean that a stay is warranted or that it would not suffer prejudice. The value of the '527 Patent lies in Motivation's ability to license some parties and exclude others through means such as injunctions. In Ebay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006), the Supreme Court rejected a district court's categorical denial of a permanent injunction based on the plaintiff's lack of commercial activity on the patent. "Courts may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Novozymes A/S v. Genencor Int'l, Inc., 474 F.Supp.2d 592, 612 (D. Del. 2007) (granting plaintiff's motion for permanent injunction and concluding "that [the plaintiff] has suffered irreparable harm because of [the defendant's] infringement of [the plaintiff's] right to exclude others from practicing its patent"). A stay would essentially eviscerate Motivation's right of exclusivity.

Granting the Defendants' motion and staying this litigation would effectively grant the Defendants a compulsory license until at least 2011, if not longer. Moreover, the stay will likely impede other attempts at enforcement since accused infringers can expect to also benefit from the effect of any stay issued in this case.

### IV. DENIAL OF A STAY IS NOT A HARDSHIP TO THE DEFENDANTS

The Defendants have the burden of showing hardship or inequity would result from the absence of a stay. See Cognex Corp. v. National Instruments Corp., C.A. No. 00-442-JJF, 2001 WL 34368283, *1 (D. Del. June 29, 2001) (denying motion to stay pending reexam because defendant failed to make a showing of a "clear case of hardship or inequity"); Voith Paper GMBH & Co. KG v. JohnsonFoils, Inc., C.A. No. 07-226-JJF, 2008 WL 874311, * 1 (D. Del. Mar. 31, 2008) (denying motion to stay despite the fact that the case was in its early stages); St. Clair Intellectual Property Consultants, Inc. v. Sony Corp., C.A. No. 01-557-JJF, 2003 WL 25283239, *1 (D. Del. Jan. 30, 2003) (denying motion to stay; pending reexamination proceeding would not "contribute to [the] end game strategy" of obtaining an injunction); Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc., C.A. No. 08-309-JJF-LPS, 2008 WL 5335400, *1 (D. Del. Dec. 19, 2008) (denying motion to stay).

The Court should consider the Supreme Court's decision in Landis, 299 U.S. 248 (1936), in assessing the Defendants' motion to stay. In Landis, the Supreme Court held that a party moving "for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." Landis, 299 U.S. at 255. Hence, the burden is squarely on the party seeking the stay to show that there is a pressing need for the delay.

Furthermore, a district court is "under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexamination, regardless of their relevancy to infringement

10

claims which the court must analyze." NTP, Inc. v. Research In Motion, Ltd., 397 F.Supp.2d 785, 787 (E.D. Va. 2005); see also Viskase Corp. v. American Nat'l Can Co., 261 F.3d 1316, 1328 (Fed.Cir. 2001) ("[t]he court is not required to stay judicial resolution in view of reexaminations").

Having now initiated a concurrent proceeding, the Defendants claim that a stay should be granted because they "may be unduly and irreparably prejudiced by having this case proceed in parallel with the reexaminations." [sic] (Op. Brf. at 9). This is blaming the victim. Any risk of inconsistent results is of the Defendants own making. Additionally, the complaint relies on the false assumption that the proceedings in the PTO follow a "parallel" standard. They do not. "Litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." In re Etter, 756 F.2d. 852, 857 (Fed. Cir. 1985). Since different standards are employed, it is neither incorrect nor unusual to expect different results. "The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions." Ethicon v. Quigg, 849 F.2d. 1422, 1428 (Fed. Cir. 1988); see also Arthrocare Corp. v. Smith & Nephew, Inc., 315 F. Supp 2d. 615, 619-620 (D. Del. 2004).

Further, the Defendants' hypothetical inability to recapture a damages award from Plaintiff is no more a risk than the Plaintiff's inability to collect a judgment from the Defendants after the stay is lifted. In this case, the greater risk is with the Plaintiff given that one Defendant has already obtained a stay in this case due to a pending bankruptcy petition. (D.I. 47.)

## V. CONCLUSION

In the abstract, the Patent Office's reexamination procedures have a laudable goal. In the abstract, the perfect reexamination procedure may well accomplish certain legitimate objectives such as providing a quick and inexpensive review of a patent in comparison to prior art that was

11

not previously available to the PTO examiner. In the abstract, the Patent Office record from a quick and inexpensive reexamination could simplify litigation. However, there is little in the motion filed by Defendants that translates these aspirational goals into the real world circumstances that this court must consider. As this Court recently noted in Kenexa BrassRing, "[i]t is a rare case in which a reexamination proceeding concludes in a reasonable time and actually changes the character of the case." Id., Feb. 18, 2009 ORDER. There is nothing about *this* reexamination proceeding that makes *this* case a "rare" or exceptional one. For the foregoing reasons, Motivation respectfully requests that the Court deny the Defendants' motion to stay the case pending reexamination of the '527 Patent.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

April 20, 2009

Karen L. Pascale (#2903) *[kpascale@ycst.com]*
Karen E. Keller (#4489) *[kkeller@ycst.com]*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

- and -

Gregory P. Casimer
Sally J. Wiggins
Lee F. Grossman
Anna B. Folgers
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

*Attorneys for Plaintiff, Motivation Innovations LLC*

## **CERTIFICATE OF SERVICE**

I, Karen L. Pascale, Esquire, hereby certify that on April 20, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

| | |
|---|---|
| Bart A. Starr | bstarr@shb.com |
| Basil Trent Webb | bwebb@shb.com |
| Charles Kennedy | ckennedy@ldlkm.com |
| Eric A. Buresh | eburesh@shb.com |
| Holly L. Teeter | hteeter@shb.com |
| Jeffrey B. Bove | jbove@cblh.com, dhallowell@cblh.com, dkt@cblh.com, jherr@cblh.com |
| Jonathan N. Zerger | jzerger@shb.com |
| Orville Cockings | ocockings@ldlkm.com, litigation@ldlkm.com |
| Paul Andrew Blatt | dblatt@whepatent.com |
| Richard K. Herrmann | rherrmann@morrisjames.com, shadley@morrisjames.com, tsmiley@morrisjames.com |
| Steven A. Nash | snash@cblh.com, ELedyard@cblh.com |
| Steven J. Fineman | fineman@rlf.com, cathers@rlf.com |
| Theodore R. Remaklus | tremaklus@whepatent.com |

I further certify that I caused a copy of the foregoing document to be served on the following attorneys of record in the manner indicated:

*By Hand Delivery and E-Mail*

Richard K. Herrmann [rherrmann@morrisjames.com]
Mary B. Matterer [mmatterer@morrisjames.com]
Amy Arnott Quinlan [aquinlan@morrisjames.com]
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
*Attorneys for Defendant Hallmark Marketing Corporation*

Robert W. Whetzel [whetzel@rlf.com]
Steven J. Fineman [fineman@rlf.com]
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0391
*Attorneys for Defendant Bed, Bath & Beyond, Inc.*

Jeffrey B. Bove [jbove@cblh.com]
Steven A. Nash [snash@cblh.com]
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
*Attorneys for Defendants DSW, Inc. and Value City Department Stores LLC*

*By E-Mail*

Bart A. Starr [bstarr@shb.com]
Eric A. Buresh [eburesh@shb.com]
Jonathan N. Zerger [jzerger@shb.com]
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
*Attorneys for Defendant Hallmark Marketing Corporation*

Charles P. Kennedy [ckennedy@ldlkm.com]
Orville R. Cockings [ocockings@ldlkm.com]
Bruce H. Sales [BSales@ldlkm.com]
Natalie S. Morelli [NMorelli@ldlkm.com]
LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK LLP
600 South Avenue West
Westfield, NJ 07090
*Attorneys for Defendant Bed, Bath & Beyond, Inc.*

Theodore R. Remaklus [tremaklus@whepatent.com]
P. Andrew Blatt [dblatt@whepatent.com]
WOOD, HERRON & EVANS
2700 Carew Tower
Cincinnati, OH 45202
*Attorneys for Defendants DSW, Inc. and Value City Department Stores LLC*

                                        YOUNG CONAWAY STARGATT & TAYLOR LLP

                                        */s/ Karen L. Pascale*

April 20, 2009
                                        Karen L. Pascale (No. 2903) [kpascale@ycst.com]
                                        The Brandywine Building
                                        1000 West St., 17th Floor
                                        P.O. Box 391
                                        Wilmington, Delaware 19899-0391
                                        Telephone: 302-571-6600
                                            *Attorneys for Plaintiff,*
                                            *Motivation Innovations LLC*