# EXHIBIT A



600 SOUTH AVENUE WEST • WESTFIELD, NEW JERSEY 07090
908.654.5000 • FAX 908.654.7866 • WWW.LDLKM.COM

PATENTS, TRADEMARKS, COPYRIGHTS & UNFAIR COMPETITION

Orville R. Cockings
908.518.6397
ocockings@ldlkm.com

April 1, 2009

**VIA E-MAIL** *(afolgers@nshn.com)*
**AND FEDERAL EXPRESS**
Anna B. Folgers
Niro, Scavone, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, Illinois 60602-4635

Re: BBB 6.0-149
*Motivation Innovations, LLC v. DSW, Inc., et al.*
Civil Action No. 08-cv-334
US District Court, District of Delaware

Dear Anna,

Enclosed please find a copy of the Request for Reexam of U.S. Patent 5,612,527 which was filed today.

Sincerely,

LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP

ORVILLE R. COCKINGS

ORC/ggm
cc: Lee Grossman, Esq. *(via e-mail: LeeGrossman@nshn.com)*
Gregory Casimer, Esq. *(via e-mail: Casimer@nshn.com)*
BBBMotivationLit@ldlkm.com

# EXHIBIT B



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Ex Parte* Reexamination Filing Data  - December 31, 2007

1.  Total requests filed since start of ex parte reexam on 07/01/81 . . . . . . . . . . . . . . . . . .  9060[1]

    a.  By patent owner    3495  39%
    b.  By other member of public    5400  59%
    c.  By order of Commissioner    165  2%

2.  Number of filings by discipline

    a.  Chemical Operation    2703  30%
    b.  Electrical Operation    3023  33%
    c.  Mechanical Operation    3334  37%

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 511 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | 2007 | 643 |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | 2008 | 165 |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2398  26%

5.  Determinations on requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8714

    a.  No. granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7998 . . . . . . . . . 92%

        (1)  By examiner    7885
        (2)  By Director (on petition)    113

    b.  No. denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 716 . . . . . . . . . . 8%

        (1)  By examiner    681
        (2)  Order vacated    35

---

[1]Of the requests received in FY 2008, 23 requests have not yet been accorded a filing date, and preprocessing of 3 requests was terminated for failure to comply with the requirements of 37 CFR 1.510.  See Clarification of Filing Date Requirements for *Ex Parte* and *Inter Partes* Reexamination Proceedings, Final Rule, 71 Fed. Reg. 44219 (August 4, 2006).

6.   Total examiner denials (includes denials reversed by Director) . . . . . . . . . . . . . . . . . . . 794

|   | | | |
|---|---|---|---|
| a. | Patent owner requester | 439 | 55% |
| b. | Third party requester | 355 | 45% |

7.   Overall reexamination pendency  (Filing date to certificate issue date)

|   | | |
|---|---|---|
| a. | Average pendency | 24.0 (mos.) |
| b. | Median pendency | 18.6 (mos.) |

8.   Reexam certificate claim analysis:

|   | | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|---|
| a. | All claims confirmed | 23% | 29% | 12% | 26% |
| b. | All claims cancelled | 7% | 12% | 21% | 10% |
| c. | Claims changes | 70% | 59% | 67% | 64% |

9.   Total ex parte reexamination certificates issued (1981 - present) . . . . . . . . . . . . . . . . . 6066

|   | | | |
|---|---|---|---|
| a. | Certificates with all claims confirmed | 1556 | 26% |
| b. | Certificates with all claims canceled | 636 | 10% |
| c. | Certificates with claims changes | 3874 | 64% |

10.   Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

a.   Certificates - PATENT OWNER REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2607

|   | | | |
|---|---|---|---|
| (1) | All claims confirmed | 592 | 23% |
| (2) | All claims canceled | 194 | 7% |
| (3) | Claim changes | 1821 | 70% |

b.   Certificates - 3rd PARTY REQUESTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3313

|   | | | |
|---|---|---|---|
| (1) | All claims confirmed | 946 | 29% |
| (2) | All claims canceled | 413 | 12% |
| (3) | Claim changes | 1954 | 59% |

c.   Certificates - COMM'R INITIATED REEXAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

|   | | | |
|---|---|---|---|
| (1) | All claims confirmed | 18 | 12% |
| (2) | All claims canceled | 30 | 21% |
| (3) | Claim changes | 98 | 67% |

# EXHIBIT C

INSTITUTE
*for*
PROGRESS

**Reexamining *Inter partes* Reexam**

Beginning in 1981, U.S. patent law set up patent reexamination as an administrative alternative to litigation for addressing patent validity concerns. The idea was to create a less expensive and speedier alternative to decide questions of patent validity. Although the level of scrutiny of the U.S. patent system has risen dramatically in light of the ongoing debate over patent reform, reexamination has received relatively little attention. Recently however, we have observed a number of trends that suggest that it might be time to carefully reexamine patent reexamination, particularly *inter partes* reexamination.

In doing so, we have discovered the following:
- *Inter partes* reexaminations requests are rising rapidly – a 6X increase between 2003 and 2007
- Reexamination, particularly *inter partes* reexamination is not simply used as an alternative to litigation, but an integral part of litigation strategy – more than half (52%) of patents in *inter partes* reexams are known to be in litigation during their reexamination
- Virtually all requests for *inter partes* reexamination are granted – 95% of *inter partes* reexam requests are granted, and this statistic may actually understate the effective grant rate
- To date, there has never been a single *inter partes* reexamination that has gone through the entire reexamination process (including appeal) and made it to completion – only three have ever received a decision by the Board of Patent Appeals and Interferences
- Despite a mandate for "special dispatch", the time required to complete an *inter partes* reexamination is much longer than commonly believed
  - Without appeal, the average pendency period for *inter partes* reexam is 43.5 months, much longer than the 28.5 months reported by the USPTO – a 95% confidence interval would put the pendency between 34 and 53 months
  - Although no *inter partes* reexam has ever been completed after being appealed, the average pendency for appealed *inter partes* reexams is 78.4 months (assuming no rework by the patent office or secondary appeal) - a 95% confidence interval would put the pendency between 5 and 8 years

**Why reexamine *inter partes* reexams?**
Over the last several years, the number of reexamination requests at the USPTO has been rising rapidly. This is particularly true for *inter partes* reexams. The number of requests for *inter partes* reexam had increased 6X from 24 in calendar 2003 to 142 in calendar 2007. (Note: Our analysis is based on calendar years rather than the USPTO's fiscal year.) This increase appears to be a result of the increasing use of reexamination as an integral part of litigation strategy by defendants or potential defendants in patent

# INSTITUTE *for* PROGRESS

litigation. According to USPTO statistics, more than half (52%) of all patents subject to *inter partes* reexamination are known to be in litigation during the reexamination process.

The story of Microsoft and Avistar is a particularly telling example. After six months of licensing negotiation, Microsoft has requested reexamination of 24 of Avistar's 29 U.S. patents. Although Avistar's key patents have previously survived two significant litigations, Microsoft's actions have delayed its licensing program and placed the company into financial distress resulting in a 25% reduction in its U.S. and European workforce.

Although the reexamination statute in the U.S. may have been intended to provide an alternative to litigation, the actual use of reexamination appears to be an augmentation of litigation strategy rather than an alternative. In many cases, patent litigation in U.S. courts and 337 actions at the International Trade Commission (investigations of unfair trade practices related to IP infringement) run simultaneously with reexamination at the Patent Office. Simultaneous litigation and reexamination raise serious questions for U.S. courts about whether to wait for the results of a pending reexamination or continue with their court proceedings.

The conclusions so far have been mixed. In some cases, patent litigation has been stayed pending the results of reexam, while in others, the cases have continued. Many people will remember for example that Judge Spencer who presided over the contentious patent battle between NTP and RIM over the "Blackberry patents" famously refused to stay the litigation proceedings despite the fact that the PTO had issued an initial rejection of the claims at issue.

These difficult and often critical decisions by circuit court judges and administrative law judges depend heavily on their understanding and expectations of what will happen in the reexamination process at the PTO. How reliable are initial office actions as a predictor of final results in a reexamination? How long will the process take? How often are the patent examiner's finding upheld on appeal? For judges, these questions are critical in determining whether a request for a stay should be granted. For litigants, these questions can strongly influence litigation strategy.

*Ex parte* reexamination was established by statute in 1981, and more than 9,000 reexamination requests have been filed with more than 6,000 reexamination certificates issued (signaling the completion of the process). The *ex parte* reexamination process is well established. Much less is known about *inter partes* reexams. Established by statute in November of 1999, the first *inter partes* reexamination was not requested until 2001. Through mid-April of 2008, there have been 396 requests for *inter partes* reexamination at the USPTO, and only 16 of those have received reexamination certificates.

# INSTITUTE for PROGRESS

Given the rising importance of reexaminations in general, and the relative scarcity of information about *inter partes* reexam specifically, we decided to take a closer look to discover what can be learned about this relatively little understood process.

## What did we do?

To examine the *inter partes* reexamination process, we copied transaction level data for every *inter partes* reexamination from the USPTO's PAIR database. These transactions reveal both the sequence and the timing of each step through the process. The database we created all cases and transactions through April 16, 2008.

We noted and corrected a number of anomalies in the PTO data including:
- Several reexaminations appeared to proceed without the initial "Request for *Inter partes* Reexamination" transaction in the PTO data – we investigated and manually filled in this missing data
- Several reexaminations included references to "*ex parte*" reexamination despite the fact that they were "*inter partes*" reexams – we manually reviewed and resolved each discrepancy
- Duplicate transactions (same reexam number, same transaction, same date) were eliminated – these were generally not errors, but represent instances where the documents were uploaded into the PAIR system in multiple parts

We then extracted the key milestone transactions in the reexamination process and mapped the process and timeline for every *inter partes* reexamination to discover what path each case had taken through the process, and how long each step in the process takes. The results of our analysis are briefly described below, and more fully captured in the attached presentation slides.

## What did we find?

### Requests for *inter partes* reexamination are rising rapidly

As described above, the number of *inter partes* reexamination requests is rising rapidly. In 2007, there were 142 requests for *inter partes* reexams, three times as many as in 2005, and nearly six times as many as in 2003. *Inter partes* reexam requests have risen nearly 90% per year (CAGR) over the last five years.

### Nearly all *inter partes* reexamination request are granted

Granting a request for reexamination is not automatic. The standard for granting a reexamination request requires that a "significant new question" of patentability must be presented by the requestor. Since their inception in 2001, there have been 396 requests for *inter partes* reexamination requested at the USPTO. Of these, 354 have reached a decision about whether the reexamination request will be granted. Over this period, ninety-five percent of all *inter partes* reexam requests have been granted. With so few requests being denied (19), we reviewed each case where a reexamination was denied, and found that the effective denial rate may actually be overstated. A number of the

# INSTITUTE
## *for*
# PROGRESS

nineteen requests for reexamination that were denied are from a small number of inventions where multiple patent reexams were requested. Still others were not for utility patents, but were request for reexamination of design patents. It is fair to say that virtually all requests for *inter partes* reexamination are granted. Whatever threshold has been established by the Patent Office for determining a "significant new question" of patentability, few requestors have been unable to clear it.

### The *inter partes* reexamination process is not linear

By tracing every single *inter partes* reexamination through the process, we were able to discover the path through reexamination that is actually followed by real patents in process. While the majority of patents follow the main sequence (Request → Grant → Non-final Office Action → ACP → Reexam Certificate), some cases skip steps, and others repeat steps multiple times. For example, some reexams skip over multiple steps and proceed quickly to a Reexam Certificate. This happens most often when the patent holder fails to respond to the Patent Office within the statutory timeframe, and the PTO proceeds to issue a certificate. Still other times, patents repeat steps multiple times. About one-quarter of the time *inter partes* reexams include multiple "Non-final Office Actions", and about one-tenth of the time they receive multiple "Actions Closing Prosecution".

### One-quarter of all *inter partes* reexam decisions are appealed, but none has ever proceeded through appeal to the end of the process

One of the major challenges in examining the *inter partes* reexam process is that very few cases have proceeded all the way through the process. Through mid-April 2008, only nineteen cases have ever proceeded past the Notice of Right to Appeal. Of these, approximately one-quarter (5 cases - 26%) have been appealed to the Board of Patent Appeals and Interferences (BPAI), one case (~5%) went back for another Action Closing Prosecution, and the remaining 13 cases (68%) moved on to "Intent to Issue a Reexam Certificate".

Of the cases that have gone on to appeal, only three have received a decision by the BPAI. None of the three decisions represents a final decision by the BPAI that can be appealed to the Federal Circuit as in each case, the Board added new grounds for rejection and remanded the cases to the Patent Office for further action. None of the three cases has reached a final Reexamination Certificate, and it has taken 4, 4, and 5 years for the cases to get to the initial BPAI decision.

### The average pendency of 28.5 months reported by the USPTO is highly skewed

The USPTO regularly publishes statistics about *inter partes* reexaminations. According to their latest publication (December 31, 2007), the average pendency (Filing date to certificate issue date) is 28.5 months. This calculation is based on only 12 *inter partes* reexaminations that had reached a final certificate by that date. In our analysis which is up to date as of April 16, 2008, we found 16 reexaminations that had reached a final

# INSTITUTE
## *for*
# PROGRESS

certificate. Our calculation of average pendency for those cases was only slightly longer at 30.1 months.

However, in carefully examining the 16 cases that have received final certificates, we note that 10 of the completed reexams skipped directly from the "First Non-final Action" to the "Intent to Issue a Reexam Certificate". Upon closer inspection, each of these cases skipped multiple steps because the patent owner failed to respond to the office action. The average pendency of these cases was 24 months, while the average for the remaining six cases that followed the basic process (Non-final Action → ACP → Right of Appeal → Notice of Intent to Issue a Reexam Certificate → Reexam Certificate) was ~39 months. It should be noted that NONE of the cases that have received a final Reexam Certificate have gone to appeal.

While mathematically accurate, the pendency statistic provided by the USPTO is highly misleading. An appropriate reading of the statistic is that the Patent Office takes two years to dispose of a patent through *inter partes* reexam if the patent holder doesn't care to defend its rights. It takes significantly longer to get to a resolution if the patent holder participates in the process.

Average pendency for an un-appealed *inter partes* reexam is more than 3.5 years
Given the small number of cases that have proceeded through the *inter partes* reexam process, a more appropriate way to estimate average pendency is to calculate the time required for cases to proceed through each step in the process and sum them up. We calculated an average time and a 95% confidence interval for each step in the main sequence. Based on our calculations, it takes more than 3 ½ years (43.5 months) for the average case to proceed through the basic reexam process to a final conclusion – this assumes that the case is not appealed to the BPAI or beyond. A 95% confidence interval suggests a range of between 34 and 53 months for average pendency for an un-appealed *inter partes* reexam.

Expected pendency for appealed *inter partes* reexams is at least 6.5 years
*Inter partes* cases that go through the appeal process can be expected to take much longer than the 3 ½ years described above. Calculating average pendency for appealed cases is difficult because as we have noted, there has never been an appealed *inter partes* case that has completed the process. However, if we make a conservative assumption that all cases that go through the appeal process will receive a decision by the BPAI and immediately move to "Intent to Issue a Reexam Certificate", then we can calculate an average expected pendency. The result of this calculation is that average pendency (assuming no "rework" by the patent office and no secondary appeals to the BPAI, the Federal Circuit, or the Supreme Court) is 78.4 months – slightly longer than 6.5 years. A 95% confidence interval suggests an average pendency for appealed cases (again, assuming no rework) is between 5 and 8 years (60-97 months)! Given that the only three *inter partes* reexam cases that have received a BPAI decision all require further "rework" and are subject to further appeal, these estimates may be highly conservative.

# INSTITUTE *for* PROGRESS

According to statute, reexam cases are to be handled with "special dispatch". This means that reexam cases are to receive priority over all other cases. The Patent Office has reportedly set a target of 24 months to complete the reexam process, but so far, the actual time to conclude an *inter partes* reexam is far beyond this target. This can not help but raise significant concern to anyone who is interested in the efficient administration of justice in the U.S. patent system.

## Conclusion

The *inter partes* reexam process requires special attention by the U.S. Patent Office. At present, the time to complete these cases far exceeds the expectation of "special dispatch" embodied in the patent statute. Federal judges, administrative law judges, and litigants should take special note of these facts as they can significantly impact the progress of patent litigation.

# INSTITUTE for PROGRESS

*The national voice on Intellectual Property*

# Reexamining
# Inter Partes Reexam

## April 2008

www.instituteforprogress.com

INSTITUTE *for* PROGRESS

# Data Source and Method of Analysis

- All data was taken directly from the USPTO PAIR system
- Includes all Inter Partes Reexam cases and transactions listed through April 16, 2008
  - Includes 95/000,001 through 95/000,362 and 95/001,001 through 95/001,037 except for cases 95/001,007 and 95/001,025 for which there is no data in PAIR
  - Case 95/000,350 is excluded from timeline analysis since no date is recorded for "Receipt of Original Inter Partes Reexam Request"
- All transactions were downloaded from the Electronic File Wrapper, and were augmented with additional transactions from the Transaction History wherever missing elements were identified
- Obvious anomalies were corrected manually
  - For example:
    - "Receipt of Original Inter Partes Reexam Request" identified where missing
    - Many erroneous references to "Ex Parte Reexams" were reviewed and eliminated
    - Duplicate transactions (same case number, same transaction, same date) were eliminated
- Key milestones for each case were extracted along with their dates, and the analysis was performed on these transactions

2

# Requests for Inter Partes Reexams have been Rising Rapidly

INSTITUTE *for* PROGRESS



Request for Inter Partes Reexams by Year of Request

(1) Actual through 4/16/2008, Forecast equals (108 days/365 days) X 44 reexam requests to date
Note: Reexam requests are based on calendar years rather than fiscal years as generally reported by the USPTO
Source: USPTO PAIR Database; Institute for Progress analysis

3



# Virtually all Requests for Inter Partes Reexamination are Granted



Decisions on Request for Inter Partes Reexam

4

Source:  USPTO PAIR Database; Institute for Progress analysis



# Most Cases Follow the Main Sequence through the USPTO Inter Partes Reexamination Process

All Inter Partes Reexams through April 16, 2008

## The Normal Sequence of Inter Partes Reexam Steps

Source: USPTO PAIR Database; Institute for Progress analysis

# Some Cases Skip Steps...
## Generally Due to Patent Holder Non Responsiveness
### All Inter Partes Reexams through April 16, 2008

INSTITUTE for PROGRESS

Inter Partes Reexam Process Including Skipped Steps



Note: Three other paths are not included on chart – A to F – 1,0%; A to G – 1,0%; B to G – 1,1%

Source: USPTO PAIR Database; Institute for Progress analysis



...Other Cases Repeat Steps Multiple Times
All Inter Partes Reexams through April 16, 2008

Inter Partes Reexam Including Repeated Steps

Source: USPTO PAIR Database; Institute for Progress analysis

# Flow of Cases through the USPTO Inter Partes Reexamination Process

All Inter Partes Reexams through April 16, 2008

## Overview of Inter Partes Reexam Process



Note: Three other paths are not included on chart – A to F – 1,0%; A to G – 1,0%; B to G – 1,1%
Source: USPTO PAIR Database; Institute for Progress analysis



Correction of Inter Partes Reexam Requests INSTITUTE *for* PROGRESS
Jumped in 2006, and has Subsided Since

Percent of Inter Partes Reexam Requests Requiring Correction

9

Source: USPTO PAIR Database; Institute for Progress analysis.



Seventy Percent of IPREs receive a 1st Office Action on the Same Day as the Reexam is Ordered



**Distribution of IPRE Cases: Days between Reexam Order and 1st Office Action**

Percent of cases

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Zero | 1 to 30 | 31 to 90 | 91 to 180 | 181 to 270 | 271 to 360 | Greater than 360 | |

190 ← Cases
← % of cases

10
27
15
12
6
12

10

Days from Reexam Order to 1st Office Action

The patent holder is precluded from providing information to the examiner prior to the 1st Office Action.

Source: USPTO PAIR Database; Institute for Progress analysis





The USPTO Reports an Average Pendency of 28.5 Months; This Estimate is Skewed by Cases that have Skipped Steps

INSTITUTE *for* PROGRESS

Path taken by I-P Reexams that have received a Reexam Certificate

The 16 Inter Partes Reexams that have received a final certificate made it through the case because they skipped steps
• In 10 of 16 cases, the patent holder did not respond to an office action
• None of the patent holders appealed the decision
The low average pendency that the USPTO reports is driven by the cases that skipped steps
• Pendency for the 10 cases that skipped steps was ~24 months
• Pendency for the 6 cases that went through ACP and Right of Appeal was ~39 months

Key:
# = Number of reexams leaving step on this path
% = Percent of reexams leaving step on this path
Arrow
coloring:  → Normal sequence  → Skipped steps

Note:   The 16 cases here include all cases receiving a Reexam Certificate through April 16, 2008. The most recent data published by the USPTO includes only 12 cases through the end of their fiscal year (9/30/2007). The average pendency of these 16 cases is slightly longer (30.1 months) than the USPTO's statistic based on 12 cases.

Source: USPTO PAIR Database; Institute for Progress analysis



# INSTITUTE for PROGRESS

# With an Appeal, the IPRE Process Takes at least Five to Eight Years
## This Estimate Dos Not Include "Rework" and Secondary Appeals

## Timeline of Inter Partes Reexams With Appeal



95% Confidence Interval
Lower Bound
Upper Bound
Mean

| | |
|---|---|
| Request - Decision | 2.4 ± 0.1 |
| Decision - 1st Office Action | 1.7 ± 0.5 |
| 1st Office Action - 1st ACP | 15.8 ± 1.8 |
| 1st ACP - Right of Appeal | 9.8 ± 1.6 |
| Right of Appeal - Appeal Docketed | 28.9 ± 6.4 |
| Appeal Docketed - BPAI Decision | 6.0 ± 2.3 |
| No body knows how long it takes to do the "rework" or secondary appeal | |
| BPAI Decision - Intent to Issue (1) | 7.7 ± 3.7 |
| Intent to Issue - Certificate Issued | 6.2 ± 1.7 |
| Total | 78.4 ± 18.1 plus ? |

0   20   40   60   80   100 Months



With an appeal, the pendancy period for inter partes reexams is AT LEAST 60 to 97 months (5-8 years!) ...and that doesn't include "rework" after an appeal or secondary appeals

(1) Assumes the same time from BPAI Decision – Intent to Issue as for Right of Appeal – Intent to Issue
Source: USPTO PAIR Database; Institute for Progress analysis

# How Far Have the Inter Partes Reexams Gotten?
## Where Does the Work-In-Process Sit?
All Inter Partes Reexams through April 16, 2008

INSTITUTE for PROGRESS

IPRE Cases by Year of Original Request and Last Step COMPLETED



**Original Request Uncertified**
'07 – 5
'08 – 23
Tot – 28

**Reexam Ordered**
'05 – 2
'06 – 12
'07 – 34
'08 – 4
Tot – 52

**Non-Final Action**
'03 – 2
'04 – 10
'05 – 11
'06 – 40
'07 – 72
'08 – 12
Tot – 147

**Action Closing Prosecution**
'02 – 1
'03 – 2
'04 – 6
'05 – 10
'06 – 22
'07 – 9
Tot – 50

**Appeal Docketed**
'03 – 2
Tot – 2

**BPAI Decision**
'02 – 1
'03 – 2
Tot – 3

Court of Appeals

**Corrected Request Uncertified**
'07 – 7
'08 – 5
Tot – 12

**Reexam Denied**
'05 – 3
'07 – 6
Tot – 9

**Reexam Terminated**
'03 – 2
'07 – 1
Tot – 3

**Reexam Completed**
'05 – 3
'06 – 4
'07 – 3
Tot – 10

**BPAI Appeal Noticed**
'02 – 3
'03 – 8
'04 – 14
'05 – 13
'06 – 7
'07 – 2
Tot – 47

**BPAI Intentions Noticed**
'03 – 4
'04 – 2
'05 – 3
'06 – 4
'07 – 3
Tot – 16

**Reexam Certificate Issued**
'01 – 2
'02 – 1
'03 – 2
'04 – 5
'05 – 3
'06 – 3
Tot – 16

Source:  USPTO PAIR Database; Institute for Progress analysis

# EXHIBIT D

1 of 1 DOCUMENT

Copyright 2008 Factiva ®, from Dow Jones
All Rights Reserved

# Dow Jones Factiva

(c) 2008 Dow Jones & Company, Inc.

## Dow Jones Newswires

Dow Jones News Service

May 30, 2008 Friday 5:30 PM GMT

**LENGTH:** 1307 words

**HEADLINE:** Worried About That Infringement Case? Ask For A Reexam

**BYLINE:** By Stuart Weinberg, Of DOW JONES NEWSWIRES

**BODY:**

TORONTO (Dow Jones)--Personalized Media Communication Inc. had been mired in a patent dispute with Thomson Inc. for three years when Thomson asked the U.S. Patent and Trademark Office to reexamine PMC's patents.

The PTO agreed. That was in 2003. Five years later, the reexamination process still isn't complete and PMC's case against Thomson remains on hold pending the outcome of the reexam. "For whatever reason, the (reexamination) system, as anticipated by statute and by Congress, just isn't working...," said Gerald Holtzman, general counsel for PMC, a closely held New York company that holds patents related to digital television and Internet technology.

Patent reexamination is supposed to be a speedy alternative to litigation for determining patent validity. In 2005, the PTO created a Central Reexamination Unit tasked with processing reexaminations with "special dispatch." But, according to a recently released report, the reexam process takes far longer than commonly believed. The process is so lengthy that some defendants in patent-infringement suits are using it to augment their litigation strategy, the Institute for Progress, an independent think tank that does research on intellectual-property matters, said in its report.

"The reality is that this is becoming a business strategy on how to avoid having to deal with the real infringement issues," said Kevin Rivette, co-founder of the IFP and co-author of Rembrandts In The Attic, a seminal book on intellectual-property strategy.

The report, authored by IFP fellows Ralph Eckardt and Mark Blaxill, focused on inter partes reexaminations. Introduced by Congress in 1999, inter partes reexams allow third parties to participate in the process by responding in writing to issues raised by patent holders during reexam. Previously, third parties could only request ex parte reexams, which excludes them from the process after a reexam request is filed.

The report, which relied on publicly available PTO data, found that the number of inter-partes-reexam requests rose sixfold, from 24 in 2003 to 142 in 2007. It said 52% of patents subject to inter partes reexams were involved in litigation. The PTO granted reexam requests at a rate of about 95%, the report said. To be granted, a reexam request must raise a substantial new question of patentability.

### Unappealed Exam Takes 43.5 Months

On average, inter partes reexams take 28.5 months to complete, according to the PTO. However, while "mathematically accurate," that statistic is "highly misleading," the IFP found. That's because the PTO includes cases in which the patent holder didn't defend its rights. When those cases are excluded, the average pendency of an unappealed inter partes reexam is 43.5 months, the report said. When appeals are factored in, estimated-average pendency climbs to five-to-eight years, the report said, noting that only three inter partes reexams have been decided by the PTO's Board of Patent Appeals and Interferences.

Rivette, a former vice-president of intellectual-property strategy at International Business Machines Corp. (IBM) and current chairman of the PTO's Public Patent Advisory Committee, said the report wasn't meant as a condemnation of the PTO. Instead, it was written to highlight how defendants in patent litigation can take advantage of the disconnect between the court system and the PTO-reexamination process.

That disconnect allows defendants in infringement suits to request a reexam - knowing it will almost certainly be granted - then ask the court to stay its case until the reexam is finished, Rivette said. Obtaining a stay is an effective strategy because many patent holders have limited resources and a delay can put them into financial distress, he said. If the patent holder is a public company, "huge amounts of shareholder value can be destroyed due to nothing more than a court staying a case pending a reexam," he said.

01 Communique Laboratory Inc. (ONE.T), a Toronto software company, found this out the hard way. On March 13, the company's stock plummeted to 18 Canadian cents from 86 Canadian cents after an Ohio court stayed 01's infringement case against Citrix Systems Inc. (CTXS) because the PTO granted Citrix's request to reexamine 01's patent. In Toronto Friday, 01 is trading at 18 Canadian cents.

On March 26, Avistar Communications Corp. (AVSR), a San Mateo, Calif. developer of unified communications software, announced plans to cut 25% of its staff, or 27 workers, after the PTO agreed to Microsoft Corp.'s (MSFT) request to reexamine all 29 of Avistar's patents. Avistar hadn't sued Microsoft but it had held licensing discussions with the Redmond,. Wash. sofware giant, according to the Avistar release announcing the layoffs.

### Lawyers Use Reexam As A Selling Point

Some lawyers who specialize in intellectual property use reexaminations as a selling point. "Many people see reexam as a second bite at the apple for losing defendants," said Steven Sereboff, lawyer at Westlake Village, Calif.-based SoCal IP Law Group LLP, in an email. "We recommend taking the second bite early. We also use reexams to improve negotiating leverage, reduce the value of a patent, and to defer dealing with a problem patent. The utility of these goals depends in part on how quickly the USPTO can process reexams, and sometimes we want a slow process."

Sereboff, who runs a Web site called "Patent Assassins" with fellow SoCal lawyer Mark Goldstein, said reexams have always been a weapon in the litigation arsenal. He said he and Goldstein prefer to focus on identifying and exploiting quirks in the system, rather than opining on whether those quirks make for good or bad public policy.

John Love, Deputy Commissioner for Patent Examination Policy at the PTO, said in an email that, because inter partes reexaminations are relatively new, only a limited number have been requested or completed. "The nature of inter partes reexaminations allows for expanded participation in the process for the requester," he said. "The back and forth of filing papers and responses to papers complicates and lengthens the process. Ex parte reexams are much more limited."

The PTO is increasing its staff of senior examiners assigned to its Central Reexamination Unit, Love said. The PTO is also developing improved management information systems and analyzing the process to identify areas where efficiencies can be achieved, he said.

Worried About That Infringement Case? Ask For A Reexam Dow Jones News Service May 30, 2008 Friday 5:30 PM
GMT

Due to the effort and expense involved in filing reexam requests, it's not surprising that most requests identify a significant new question of patentability, Love said.

Holtzman of Personalized Media Communications said Congress needs to "clean up the mess it created" by failing to set a time limit on reexaminations. He recommended an 18-month limit, which is the duration the International Trade Commission sets for its infringement investigations.

Holtzman added that judges should be more discerning when deciding if a PTO reexam merits a stay. "I think courts need to be cognizant of the fact that this has become a tactic and that, at the end of the day, most patents, or significant portions of patents, are in fact confirmed by the PTO: the result of the reexamine is forcing a patent holder to wait, and in many instances try to survive, before being able to enforce its rights," he said.

```
Company Web Sites:
http://www.uspto.gov


  -Stuart Weinberg, Dow Jones Newswires; 416-306-2026;


stuart.weinberg@dowjones.com
```

TALK BACK: We invite readers to send us comments on this or other financial news topics. Please email us at TalkbackAmericas@dowjones.com Readers should include their full names, work or home addresses and telephone numbers for verification purposes. We reserve the right to edit and publish your comments along with your name; we reserve the right not to publish reader comments. [ 05-30-08 1330ET ]

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** May 31, 2008

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KENEXA BRASSRING, INC.,                )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )  Civ. No. 07-521-SLR
                                        )  (consolidated)
TALEO CORPORATION,                      )
                                        )
            Defendant.                  )


KENEXA BRASSRING, INC.,                 )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )  Civ. No. 08-276-SLR
                                        )
VURV TECHNOLOGY, INC.,                  )
                                        )
            Defendant.                  )


**O R D E R**

At Wilmington this 18th day of February, 2009, having considered defendants'

motion to stay and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 46) is denied.  It is the rare case[1] in which

a reexamination proceeding concludes in a reasonable time and actually changes the

character of the case.  There is nothing about the reexamination proceeding referenced

in the above motion that indicates this is that rare case.  Of course, the motion is denied

---

[1] I cannot recall having experienced such a case, despite my 18 years on the bench.

without prejudice to renew, should circumstances change.


_____
United States District Judge


2

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

MOTIVATION INNOVATIONS, LLC,           §
                                        §
                Plaintiff,              §
                                        §        C.A. No. 08-334-SLR
        v.                              §        (pending in the District of Delaware)
                                        §
DSW, INC., VALUE CITY DEPARTMENT        §
STORES, LLC, BED BATH & BEYOND INC.,    §
and HALLMARK CARDS, INC.,               §
                                        §
                Defendants.             §

## NON-PARTY HARTE-HANKS, INC.'S, RESPONSES AND OBJECTIONS TO SUBPOENA OF MOTIVATION INNOVATIONS, INC.

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Harte-Hanks, Inc. ("HH") hereby makes the following responses and objections to the March 25, 2009, Subpoena to produce documents (the "Subpoena").

## OBJECTION DUE TO MOTION TO STAY

1.    HH submits that compliance with the Subpoena should be deferred until the U.S. District Court for the District of Delaware in the pending action decides the Defendants' Motion to Stay the lawsuit pending a filed reexamination of the patent-in-suit.  HH is not a party to that case and should not be unnecessarily and unduly burdened by being compelled to expend time and resources in providing documents in response to the Subpoena.  This discovery would become moot if the pending action is stayed.

2.    On June 4, 2008, Plaintiff Motivation Innovations, Inc. ("Plaintiff") initiated a patent infringement action against multiple Defendants, including Bed Bath & Beyond, Inc. ("BBB").  HH is not a party to that action.  HH merely provides services to BBB.  On March 31, 2009, BBB and another Defendant filed a Request for Reexamination with the U.S. Patent and

Trademark Office.   On April 2, 2009, those Defendants filed a Motion to Stay Pending Reexamination. The Motion is now being briefed and should be decided after briefing.

      3.     The subpoena served on HH requests a production of documents on <u>April 15, 2009</u>. These requests are overly broad and unduly burdensome and responding to these requests would likely involve reviewing thousands of documents requiring substantial staff hours. Plaintiff has a duty to take steps to avoid imposing such an undue burden.   Plaintiff would not be unduly prejudiced by waiting until after the stay Motion is decided for these requests to be addressed.  The scheduled date by which document production in the pending action shall be completed is not until May 15, 2009.

**GENERAL OBJECTIONS**

      1.     HH objects to the Subpoena as most or all of the materials requested may be obtained from one of the parties to this case in a manner that is more convenient, less burdensome, and less expensive than through the Subpoena issued to HH, a nonparty.

      2.     HH objects to the Subpoena as it does not provide for payment or reimbursement to HH of the substantial costs and attorneys' fees that HH necessarily and reasonably will incur in the process of identifying, assembling, copying, and producing documents responsive to the Subpoena.

      3.     HH objects to the Subpoena to the extent that it seeks information which is covered by the attorney-client privilege or any other applicable privilege.

      4.     HH objects to the definitions provided in the subpoena for "person" and "document" to the extent said definitions are intended to broaden the definitions of the terms as provided under local rule CV-26.

### SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS

**REQUEST NO. 1**
All documents related to BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "BBB's coupon redemption systems and infrastructure." HH further objects to the request on the grounds that the request is unduly burdensome.  Plaintiff has a duty to take steps to avoid imposing such an undue burden.  In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened.  HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.  HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 2**

All materials provided to HH by BB or on behalf of BBB related to the installation, maintenance, service, and operation of BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "BBB's coupon redemption systems and infrastructure." HH further objects to the request on the grounds that the request is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden.  In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened.  HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.  HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 3**
All materials provided to HH by BBB or on behalf of BBB related to the advantages and benefits of BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not defining "advantages and benefits." HH further objects to the request on the grounds that the request is unduly burdensome.  Plaintiff has a duty to take steps to avoid imposing such an undue burden.  In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should

not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

## REQUEST NO. 4
All materials provided to HH by BBB or on behalf of BBB related to the use of BBB's coupon redemption systems and infrastructure.

## RESPONSE:

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "related to the use of BBB's coupon redemption systems and infrastructure." HH further objects to the request on the grounds that the request is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

## REQUEST NO. 5
All materials provided to HH by BBB or on behalf of BBB related to any change or modification to of BBB's coupon redemption systems and infrastructure.

## RESPONSE:

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not defining "any change of modification." HH further objects to the request on the grounds that the request is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

## REQUEST NO. 6
All materials provided to BBB by HH or on behalf of HH related to the installation, maintenance, service, and operation of BBB's coupon redemption systems and infrastructure.

## RESPONSE:

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not defining "installation, maintenance, service, and operation

of BBB's coupon redemption systems and infrastructure." HH further objects to the request because it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 7**
All materials provided to BBB by HH or on behalf of HH related to the advantages and benefits of BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not defining "advantages and benefits. HH further objects to the request on the grounds that the request is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 8**
All materials provided to BBB by HH or on behalf of HH related to the use of BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "related to the use of BBB's coupon redemption systems and infrastructure." HH further objects to the request on the grounds that the request is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 9**
All materials provided to BBB by HH or on behalf of HH related to any change or modification of BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not defining "any change or modification." HH further objects to the request on the grounds that the request is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10**
All communications between HH and BBB related to this lawsuit, the patent in suit, BBB's coupon redemption systems and infrastructure, Motivation, and/or Victor Ovadia.

**RESPONSE:**

HH objects to this request as being overly broad and unduly burdensome, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "BBB's coupon redemption systems and infrastructure." HH further objects to the request on the grounds that it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 11**
Documents sufficient to identify the names of anyone working on behalf of HH responsible for and/or involved in the marketing of the BBB coupon redemption systems and infrastructure by and to any third party.

**RESPONSE:**

HH objects to the request because it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing such an undue burden. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 12**
Documents sufficient to identify the names of anyone working on behalf of HH responsible for and/or involved in the installation, maintenance, service of the BBB coupon redemption systems and infrastructure by and to any third party.

**RESPONSE:**

HH objects to the request because it is unduly burdensome.  Plaintiff has a duty to take steps to avoid imposing such an undue burden.  In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened.  HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 13**
All documents related to any indemnification agreements between HH and BBB.

**RESPONSE:**

HH objects to the request on the grounds that it is unduly burdensome.  Plaintiff has a duty to take steps to avoid imposing an undue burden on HH.  In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened.  HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.  HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 14**
All contracts, agreements, and/ statements of work between HH and BBB.

**RESPONSE:**

HH objects to this request as overly broad in that it is not restricted to agreements potentially relevant to the pending action.  HH further objects to the request as unduly burdensome.  Plaintiff has a duty to take steps to avoid imposing an undue burden on HH.  In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened.  HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence.  HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 15**
All documents showing statistics related to the production, use or redemption of BBB's coupon redemption systems and infrastructure.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "statistics."  HH further objects to the request as unduly burdensome.  Plaintiff has a duty to take steps to avoid imposing an undue burden on HH.  In this case, the documents sought from Non-Party HH

are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 16**
All documents related to the machine readable code on BBB's coupons.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "machine readable code." HH further objects to the request because it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing an undue burden on HH. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 17**
All documents related to the relationship between the machine readable code on BBB's coupons and the data associated with that machine readable code.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "machine readable code" or "the data associated with that machine readable code." HH further objects to the request on the grounds that it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing an undue burden on HH. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 18**
All documents related to the storing of the data associated with the machine readable code on BBB's coupons.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "machine

readable code" or "the data associated with the machine readable code." HH further objects to the request because it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing an undue burden on HH. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 19**
All documents related to any device which BBB's uses to scan the identification code on BBB's coupons.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "the identification code." HH further objects to the request because it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing an undue burden on HH. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

**REQUEST NO. 20**
All documents related to how the discount associated with BBB's coupons is applied to BBB store items when the BBB coupon is scanned.

**RESPONSE:**

HH objects to this request as being overly broad, as lacking a proper temporal limitation, and as being vague and over inclusive in not providing a clear and adequate definition for "discount associated with BBB's coupons." HH further objects to the request because it is unduly burdensome. Plaintiff has a duty to take steps to avoid imposing an undue burden on HH. In this case, the documents sought from Non-Party HH are likely to be available from a party to the pending action such that a nonparty should not be burdened. HH further objects to the request on the grounds that it requests information which is not relevant to the pending action and is not reasonably calculated to lead to the discovery of admissible evidence. HH even further objects on the grounds that the request may seek confidential and trade secret information.

Respectfully submitted,

CLEMENS & SPENCER
112 E. Pecan St., Suite 1300
San Antonio, Texas  78205
Tel:  210.227.7121
Fax:  210.227.0732
E-mail: jowersj@clemens-spencer.com

Dated: April 13, 2009          By:_____
                                   Jeffrey J. Jowers
                                   State Bar No. 24012932

Attorneys for Subpoenaed Party,
Harte-Hanks, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of April, 2009, I have mailed by United States Postal Service the document to the following:

Ms. Karen L. Pascale
Ms. Karen E. Keller
Young Conaway Stargatt & Taylor, LLP
The Brandywine Bldg.
1000 West St., 17th Floor
Wilmington, DE  19801

Mr. Gregory P. Casimer
Mr. David J. Sheikh
Ms. Sally J. Wiggins
Niro, Scavone, Haller & Niro
181 W. Madison St., Suite 4600
Chicago, IL  60602

JEFFREY J. JOWERS

189334/0002118-24129                    10